IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLIPCO, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 5043 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| IGNITE DESIGN, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Clipco, Ltd. ("Clipco") sues Ignite Design, LLC ("Ignite") for patent infringement pursuant to 35 U.S.C. § 271 *et seq.*, and breach of a license agreement. Clipco's motion for claim construction is before the court.

## BACKGROUND

U.S. Patent No. 5,270,909 ("the '909 patent") entitled "Openable Handle Attachment" was filed with the United States Patent and Trademark Office on November 20, 1992, and issued on December 14, 1993. Def. Brief at Ex. A. The patent describes an openable handle attachment that can be used with a number of portable objects such as a mug or flashlight. Pl. Mot. at 3; Def. Brief at 1. Clipco owns the '909 patent and granted Ignite a non-exclusive license to attach the openable handle attachment to certain types of beverage containers pursuant to the terms of a license agreement. Answer at ¶10. Ignite claimed its products were not covered by the '909 patent and refused to make royalty payments under the license agreement. Answer at ¶11. Clipco alleges Ignite manufactured and sold products that infringed the '909 patent and breached the license agreement.

1

# DISCUSSION

## I. Legal Standard

Claim construction is a question of law. To construe a claim, the court must first look to intrinsic evidence, "*i.e.*, the patent itself, including the claims, the specification, and if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). The court must begin with the plain claim language. *York Prods., Inc. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1572 (Fed. Cir. 1996). Claim terms must be given their ordinary and accustomed meaning. *Johnson Worldwide Assoc., Inc., v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). The words used in the claim are interpreted in light of the intrinsic evidence of record, including the written description, drawings, and prosecution history. *Dana Corp. v. American Axle & Manuf., Inc.*, 2004 U.S. App. LEXIS 18265, at * 12 (Fed. Cir. Aug. 27, 2004). Courts will not rewrite claims; instead, they are to give effect to the terms chosen by the patentee. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999).

Both parties rely on dictionary definitions to support their proposed claim constructions. The appropriate use of dictionary definitions in claim construction is somewhat unclear. The Federal Circuit has stated:

> When a patent is granted, prosecution is concluded, the intrinsic record is fixed, and the public is placed on notice of its allowed claims. Dictionaries, encyclopedias and treatises, publicly available at the time the patent is issued, are objective resources that serve as reliable sources of information on the established meanings that would have been attributed to the terms of the claims by those of skill in the art. Such references are unbiased reflections of common understanding not influenced by expert testimony or events subsequent to the fixing of the intrinsic record by the grant of the patent, not colored by the motives of the parties, and not inspired by litigation. *Indeed, these materials may be the most meaningful sources of information to aid judges in better understanding both the technology and the terminology used by those skilled in the art to describe the technology.*

*Tex. Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1203 (Fed. Cir. 2002) (emphasis added). *Texas Digital* explains that because dictionaries may have multiple definitions for a term that do not apply to the claim, the interpreting court must refer to the intrinsic record to determine which definition is most consistent with the words used by the inventor. *Id.* Indeed, the dictionary definition must be rejected if it is inconsistent with the intrinsic record. *Id.* at 1204.

In contrast, *C.R. Bard Inc. v. U.S. Surgical Corp.*, No. 04-1135, 2004 U.S. App. LEXIS 22738 (Fed. Cir. Oct. 29, 2004), emphasizes that the intrinsic record alone remains the primary source for construing claim language. *Id.* at *8. The Federal Circuit has granted an *en banc* rehearing to broadly address the law of claim construction. *Phillips v. AWH Corp.*, 376 F.3d 1382 (Fed. Cir. July 21, 2004). Specifically, one of the issues the court intends to clarify is the use of dictionaries as a source for claim construction. *Id.* at 1383. There is no need to await the forthcoming *en banc* decision before construing the '909 patent claims. While the full extent to which dictionaries may be used is unclear, dictionaries may be used to some degree to determine the ordinary and customary meaning of claim terms. *See e.g., Texas Digital*, 308 F.3d at 1203-05. In other words, the use of dictionaries does not mean intrinsic evidence has been ignored. The court relies on intrinsic evidence as the primary source for construing disputed claim language, but also considers dictionary definitions for the plain and ordinary meaning of disputed terms. Finally, the court does not consider the accused device in determining the scope of the claims. *Young Dental Mfg. Co., Inc. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1141 (Fed. Cir. 1997).

## II. Disputed Claims

The patent has a total of 21 claims. Def. Brief at Ex. A. The parties agree claims 2 and 21 are the only independent claims at issue. Pl. Reply at 2; Def. Brief at 7. The dispute centers on the

meaning of the phrase "elongated arm." *Id.* The parties also dispute construction of the means-plus-function language in the last paragraphs of claims 2 and 21. Pl. Reply at 9; Def. Brief at 11.

Claim 2 states:

> An openable handle for attachment to a portable object, the handle comprising:
>
>> **an elongated first arm** having first and second opposed ends and extending therebetween and **an elongated second arm** having first and second opposed ends and extending therebetween, said first arm and said second arm each being connected to the object by the corresponding first ends thereof in spaced relation to each other and in such manner to be separable therefrom, the second end of said first arm and the second end of said second arm each extending outwardly from the object attached to said handle and defining therebetween a site for locating means for making said handle openable; and
>
>> **means for making said handle openable** located at the site between the second end of said first arm and the second end of said second arm and permitting selective passage therethrough of a member from which the object is to be suspended, **said means for making said handle openable being automatically recloseable after opening.**

Def. Brief at Ex. A, col. 11 (emphasis added).

Claim 21 states:

> The combination of a mug and an openable handle therefor, wherein said openable handle comprises
>
>> **an elongated first arm** having first and second ends and extending therebetween and **an elongated second arm** having first and second opposed ends and extending therebetween, said first arm and said second arm each being connected to the mug in spaced relation to each other, the first end of said first arm and the first end of said second arm each being connected to the mug in such manner that the handle is integrally attached thereto so as not to be removable from the mug, the second end of said first arm and the second end said second arm each extending away from the mug attached to said handle and defining therebetween a site for making said handle openable; and

4

**means for making said handle openable** located at the site between the second end of said first arm and the second end of said second arm and permitting selective passage therethrough of a member from which the mug is to be suspended, **said means for making said handle openable being automatically recloseable after opening**.

Def. Brief at Ex. A, col. 14 (emphasis added).

## A.    "Elongated Arm"

The parties seek construction of the phrase "elongated arm" as used in claims 2 and 21.

### 1.    Clipco's Proposed Construction

Clipco relies on The American Heritage Dictionary (2nd Ed. 1982), and the Random House Dictionary (Rev. Ed. 1979) to define the word "elongate" as "lengthened" or "extended." Pl. Mot. at 6. It relies on the Random House Dictionary and Webster's Third New International Dictionary–Unabridged (1981) to define the word "arm" as "any armlike part or attachment, as a lever on a machine" or "a projecting part of a machine or a mechanical appliance that often moves up and down or rotates." Based on these definitions, Clipco submits the proper construction of "elongated first arm" and "elongated second arm" is "first projection" and "second projection." Pl. Mot. at 1, 6.

Clipco contends the specification supports its proposed claim construction because the illustrated embodiments and detailed descriptions show the first and second elongated arms as projections from the object to which they are attached. Based on the illustrated embodiments and descriptions, Clipco asserts the particular appearance and dimensions of the arms are not material to the invention as long as the free ends of the arms project from the object to which they are attached so as to provide the requisite "openable, central portion." Pl. Mot. at 8; Pl. Reply at 8.

Clipco therefore reasons that "elongated first arm" and "elongated second arm" mean "first projection" and "second projection."

### 2. Ignite's Proposed Construction

Ignite disputes Clipco's proposed construction, arguing that it ignores the word "elongate." In advancing its own proposed construction, Ignite relies on Webster's New Collegiate Dictionary[1] to define both "arm" and "elongated." According to Ignite, the ordinary meaning of the term "arm" when used in a mechanical sense is a "slender part of a structure projecting from a main part." Def. Brief at 7. Ignite then defines "elongated" as "either stretched out or having a length substantially greater than its width." Def. Brief at 8. Based on these definitions, Ignite contends the proper construction of "elongated arm" is "an element having a stretched out or lengthened configuration, and having a length substantially greater than its width." Def. Brief at 10.

Ignite argues that the specification supports its claim construction. First, Ignite looks to the language describing the arms: "Handle 10 preferably has elongated, curved, rigid or semi-rigid upper and lower arms. . . which each extend between and terminate in opposed corresponding inner fixed ends. . . and outer fixed ends." Def. Brief at 8. Second, Ignite points out that each illustration displays the arms as having a length substantially greater than their width. Def. Reply at 6. Third, Ignite highlights that the word "elongated" is used consistently in the '909 patent to describe components that are substantially longer than they are wide. Def. Brief at 8. Finally, Ignite claims that "elongated arm" cannot mean a mere "projection," as proposed by Clipco, because other elements project outwardly from the mug, but are not defined as "elongated arms," *e.g.* "flanges."

---

[1]Ignite does not specify either the edition or the year of the cited dictionary.

Def. Reply at 7. Ignite thus construes "elongated arm" as "an element having a stretched out or lengthened configuration, and having a length substantially greater than its width." Def. Brief at 10.

### 3. Findings

The court looks first to the plain language of the claims. Claims 2 and 21 use the phrase "elongated arm" and describe the arms as "each extending outwardly from the object attached" (claim 2), and "each extending away from the mug attached" (claim 21). Def. Brief at Ex. A, col. 11, 14. Both parties rely on dictionary definitions to provide ordinary meanings of the terms "elongated" and "arm." However, Clipco fails to submit its cited dictionary definitions to the court, and Ignite fails to establish the date of its cited dictionary definitions. The court therefore consulted Webster's Third New International Dictionary (1986) for ordinary and relevant meanings of the words "arm" and "elongate." Two definitions of "arm" are particularly consistent with the language used in the specification: "a lateral and usually horizontally extended attachment" and "one of two or more lateral and usually horizontally extended parts." *Id.* at 118. "Elongate" is defined as "stretched out, lengthened, having a form notably long in comparison to its width." *Id.* at 737. The intrinsic evidence of record supports a construction of the phrase "elongated arm" consistent with these dictionary definitions.

The phrase "elongated arm" is used throughout the patent to describe components of the openable handle attachment. The abstract states:

> [a]n openable handle generally formed as a spring-closing carbiner is provided for attachment to a manually transportable object and has **elongated arms** connected to the transportable object in spaced relation to each other. . . . The handle is attached to the transportable object so as not to be separable therefrom and **one end of the first arm and one end of the second arm each extend outwardly from the attached transportable object**.

7

Def. Brief at Ex. A (emphasis added). The summary of the invention briefly describes the handle as "an openable handle for attachment to a portable object. The handle includes an elongated first arm. . . and an elongated second arm. . . ." Def. Brief at Ex. A, col. 2-3.

The detailed description of the embodiments describes the components of the handle (10), including the elongated arms (12 and 14):

> Handle 10 preferably has **elongated, curved, rigid or semi-rigid upper and lower arms, 12, 14, respectively. . . .** Each arm 12, 14 or openable handle attachment 10 has one corresponding inner end 12', 14' rigidly fixed preferably directly to mug M1, such that end 12' is substantially vertically, spacedly fixed above end 14' on wall W1. **Upper arm 12 extends generally horizontally outward from wall W1 and then preferably curves gradually downward** to terminate in a free, outer end 12" which is formed for latching interconnection with a free end 16" of openable center portion 16. **Lower arm 14 also extends generally horizontally outwardly from wall W1 of mug M1 and then curves preferably gently upwardly** until terminating in free end 14".

Def. Brief at Ex. A, col. 4 (emphasis added). Although the detailed description allows for variations in the handle, each embodiment has arms that extend generally horizontally outward from the attached object and are longer than they are wide. Def. Brief at Ex. A, col. 5, Figs. 1-17. For example, in figure 5, the arms "do not curve quite so gently as in previous handle attachment 10, but rather extend horizontally straight and substantially parallel to each other from wall W2. . . . " Def. Brief at Ex. A, col. 5, Fig. 5.

Thus, the intrinsic evidence is consistent with the relevant dictionary definitions of "arm" and "elongate" with one slight modification. As set forth above, the relevant dictionary definitions define "arm" as a "lateral" attachment. However, nothing in the specification limits attachment of the arms to the side of the portable object rather than, for instance, the top or bottom. Therefore, consistent with the intrinsic evidence, the court does not construe "arm" as a lateral attachment. *See*

8

*Tex. Digital Sys.*, 308 F.3d at 1204. The court construes the phrase "elongated arm" to mean "an attachment that is long in comparison to its width and that generally extends horizontally outward."

Unlike either Clipco's or Ignite's proposed construction, the court's construction gives effect to the plain meaning of both words, and is consistent with the intrinsic evidence of record. Clipco's proposed construction – "a projection" – ignores the word elongated. As set forth above, the specification consistently describes the arms as elongated and, thus, the claims must be construed in such a manner as to give meaning to the word elongated. *See Power Mosfet Technologies, L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004); *Dana Corp.*, 2004 U.S. App. LEXIS 18265, at *12-13. Ignite's proposed construction – "an element having a stretched out or lengthened configuration, and having a length substantially greater than its width" – ignores the word arm, and goes beyond the ordinary meaning of elongate to the extent it requires *substantially* greater length than width.

**B.    Means-Plus-Function**

Claims 2 and 21 contain nearly identical means-plus-function language:

> means for making said handle openable located at the site between the second end of said first arm and the second end of said second arm and permitting selective passage therethrough o f a member from which the [object or mug] is to be suspended, said means for making said handle openable being automatically recloseable after opening.

Def. Brief at Ex. A, col. 11, 14. The parties agree these claims are written in means-plus-function format, but they dispute the scope of the claimed functions and corresponding structures.

Pursuant to § 112, P 6 of the Patent Act:

> [a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in

support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. §112, P 6. Means-plus-function limitations must be interpreted in a two-step process: the court must first identify the claimed function and then look to the written description to identify the structure(s) corresponding to that function. *Cardiac Pacemakers Inc. v. St. Jude Medical, Inc.*, 296 F.3d 1106, 113 (Fed. Cir. 2002); *Micro Chemical, Inc. v. Pratt*, 194 F.3d 1250, 1258 (Fed. Cir. 1999). The statute does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim. Nor does the statute permit incorporation of a structure from the written description beyond that necessary to perform the claimed function. *Micro Chemical*, 194 F.3d at 1258. A structure disclosed in the specification is a "corresponding" structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim. *B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.3d 1419, 1424 (Fed. Cir. 1997).

### 1. The Claimed Functions

The parties agree the first function stated in both claims is "making said handle openable." Pl. Reply at 9; Def. Brief at 12. They dispute the scope of the second function. Ignite construes the second function as "making the handle openable and automatically recloseable after opening." Def. Brief at 12. Clipco identifies the second function as "the means for making the handle openable recloses after it has been opened." Pl. Reply at 10. The court must construe the function of a means-plus-function limitation to include the limitations contained in the claim language, and only those limitations. *Cardiac Pacemakers*, 296 F.3d at 1113. The court must not narrow or broaden the scope of the function beyond the claim language. *Id.* Ordinary principles of claim construction

govern interpretation of the claim language used to describe the function. *Id.* Thus, the court may review intrinsic evidence of record to identify the claimed function. *Id.* at 1114-5.

The prosecution history of claims 2 and 21 provides guidance in construing the claimed functions. As originally submitted, the means-plus-function language in claims 2 and 21 did not include the language "means for making said handle openable being automatically recloseable after opening." Def. Brief, Ex. D at 26. The patent examiner rejected claims 2 and 21 as originally submitted. *Id.* at 70. Claims 2 and 21 were thereafter amended to include the limitation "said means for making said handle openable being automatically recloseable after opening." *Id.* at 76-77. The remarks to the amendment explain that "the limitation previously in Claim 5 (that the openable handle is automatically recloseable) has... been added to base Claim 21" and incorporated into claims 1 through 20. *Id.* at 78. The patent examiner approved the amended claims with the added limitation. *Id.* at 83. The prosecution history clearly defines the added language as a separate function limitation.

Based on the plain meaning of the claims and consistent with the intrinsic evidence of record, the court construes claims 2 and 21 to identify one means for performing two functions. *See Cardiac Pacemakers*, 296 F.3d at 1114-5 ("The intrinsic evidence of record indicates that the third monitoring means performs dual functions."). The means for making the handle openable has to perform two functions: (1) make the handle openable; and (2) make the handle automatically recloseable. The court next looks to the specification to identify at least one corresponding structure that performs both functions. *Id.*

11

## 2. The Corresponding Structures.

In order to qualify as corresponding, the structure must not only perform both claimed functions, but the specification must clearly associate the structure with performance of both functions. *Id.* at 1113. Alternative embodiments may disclose different corresponding structures. *Id.* Clipco contends that all embodiments disclosed in the '909 patent perform the claimed functions. Pl. Reply at 11. Ignite contends there are only three corresponding structures that perform the first function and one corresponding structure that performs the second function. Def. Brief at 12-13. Ignite's analysis is flawed because it does not identify corresponding structures that perform *both* functions.

The specification identifies two alternative corresponding structures that perform both the open and close functions. First, referring to figures 1 through 4, 16 and 17, the specification describes the openable center portion of "handle 10" as an elongated openable central portion that is pivotally connected by a pin to the free end of the lower arm. The free end of the openable central portion and the free end of the first arm engage in a latching interconnection. Def. Brief at Ex. A, col. 4. Handle 10 has an internal spring to facilitate automatic reclosing of the openable central portion. *Id.* The specification clearly associates this structure with performing both functions by stating "[t]hus handle attachment 10. . . is intended to operate in openable and recloseable fashion. . . and may be repeatedly opened and closed." *Id.*

Second, referring to figure 5, the specification describes "handle 21" as a "variation of the invention" generally structured as a spring-mounted sliding bolt arrangement. *Id.* at col. 5. In this variation, the openable center portion has a peg or knob formed on its end. Free end of the lower handle is formed as a hollow tube and has an elongated groove formed longitudinally through which

the peg or knob passes. Housed within hollow free end of the lower handle, beneath the end of the center portion is a spring for biasing bolt upwardly into the extended position. The specification describes how this structure provides means for making the handle openable and automatically recloseable: the user can "slide bolt (26) downwardly... and thereby open handle 21. Mere removal of the operative digit will allow bolt (26) to snap upwardly under the force of spring (28) so as to once again attain the closed position...." *Id.* at col. 6.

Clipco argues the embodiments shown in figures 6 through 15 also include corresponding structures. The court disagrees. First, the embodiment shown in figure 6 does not provide a site between the free ends of the first and second arms for locating a means for making the handle openable and recloseable as required in claims 2 and 21. Instead, the free ends of the arms taper gradually to a point until touching. *Id.* at col. 6. Second, unlike other variations, the handle displayed in figure 7 does not close automatically. *Id.* at col. 7. Third, the specification does not clearly associate the structures displayed in figures 8 and 9 with performing the automatically recloseable function. *Id.* at col. 7-8. *See Cardiac Pacemakers*, 296 F.3d at 1113. Finally, the embodiments shown in figures 10 through 15 are not structures that perform the claimed functions. Rather, figures 10 through 15 incorporate handle 10. Def. Brief at Ex. A, col. 8-10.

The court therefore construes the "means for making said handle openable" and "automatically recloseable" to cover the two structures for attaching the openable center portions of "handle 10" and "handle 21" and their equivalents. *Id.* at col. 4-6.

February 23, 2005                                   ENTER:

                                                                                                      Suzanne B. Conlon
United States District Judge