

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLIPCO, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 5043 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| IGNITE DESIGN, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Clipco, Ltd. ("Clipco") sues Ignite Design, LLC ("Ignite") for patent infringement pursuant to 35 U.S.C. § 271 *et seq.*, and breach of a license agreement. The parties cross-move for summary judgment on the infringement issue.

## BACKGROUND

### I. The Parties

The following facts are undisputed. U.S. Patent No. 5,270,909 ("the '909 patent") entitled "Openable Handle Attachment" was filed with the United States Patent and Trademark Office on November 20, 1992, and issued on December 14, 1993. Clipco Facts at ¶ 6. The patent describes "an openable and reclosable, rigid integral handle attachment for small portable items to permit quick, facile selective attachment to and release from another item, such as a backpack or belt." Ignite Add'l Facts at ¶ 1. The patent identifies Jennifer Weiss Kaslow, president of Clipco, and her father Richard Weiss as co-inventors of the patent. Clipco Facts at ¶¶ 5-6. Clipco is the sole owner of the '909 patent by assignment. *Id.* at ¶ 7; Ignite Facts at ¶ 1.

1

Ignite manufactures and sells insulated mugs and coffee presses. Ignite Facts at ¶ 12. In December 2002, Clipco granted Ignite a non-exclusive, royalty-bearing license to use the '909 patent. Clipco Facts at ¶ 8. In September 2003, Ignite informed Clipco that it did not believe its products were covered by the patent. *Id.* Ignite never paid royalties to Clipco under the license agreement. *Id.* Ignite sells Extreme Tumbler mugs and an Extreme Coffee Press to Starbucks Corporation. *Id.* at ¶ 9. At one time, Ignite marked certain products with the '909 patent number. *Id.*

## II. The '909 Patent

Clipco alleges that Ignite's Extreme Tumbler Mug infringes Claims 2-7, 20 and 21 of the '909 patent. Ignite Facts at ¶ 13. Clipco alleges Ignite's Extreme Coffee Press infringes Claims 2-7 and 20. *Id.* Claims 2 and 21 are independent claims. *Id.* at ¶ 14. Claim 2 states:

> An openable handle for attachment to a portable object, the handle comprising:
>
> an elongated first arm having first and second opposed ends and extending therebetween and an elongated second arm having first and second opposed ends and extending therebetween, said first arm and said second arm each being connected to the object by the corresponding first ends thereof in spaced relation to each other and in such manner that said handle is attached to the object so as not to be separable therefrom, the second end of said first arm and the second end of said second arm each extending outwardly from the object attached to said handle and defining therebetween a site for locating means for making said handle openable; and
>
> means for making said handle openable located at the site between the second end of said first arm and the second end of said second arm and permitting selective passage therethrough of a member from which the object is to be suspended, said means for making said handle openable being automatically recloseable after opening.

Clipco Ex. 18, col. 11, ln. 4-27.

Claim 21 states:

> The combination of a mug and an openable handle therefor, wherein said openable handle comprises
>
> an elongated first arm having first and second ends and extending therebetween and an elongated second arm having first and second opposed ends and extending therebetween, said first arm and said second arm each being connected to the mug in spaced relation to each other, the first end of said first arm and the first end of said second arm each being connected to the mug in such manner that the handle is integrally attached thereto so as not to be removable from the mug, the second end of said first arm and the second end said second arm each extending away from the mug attached to said handle and defining therebetween a site for making said handle openable; and
>
> means for making said handle openable located at the site between the second end of said first arm and the second end of said second arm and permitting selective passage therethrough of a member from which the mug is to be suspended, said means for making said handle openable being automatically recloseable after opening.

*Id.* at col. 14, ln. 29-52.

Claims 3-7 and 20 are dependent claims. Ignite Facts at ¶ 14. Claim 3 states:

> The openable handle of claim 2, wherein said means for making said handle openable is an elongated member having first and second opposed ends and extending therebetween, the first end of said elongated member being pivotally connected to the second end of one of said first arm and said second arm and the second end of said elongated member including means for selectively openable latchable connection to the second end of the other of said first arm and said second arm.

*Id.* at col. 11, ln. 27-35.

Claim 4 requires that the means for making the handle openable be recloseable after opening. Clipco Facts at ¶ 23. Claim 5 requires that the means for making the handle openable be repeatedly openable and recloseable. *Id.* at ¶ 24. Claim 6 adds a limitation requiring that the means for making

3

the handle openable include a spring for effecting automatic reclosing of the openable portion. *Id.* at ¶ 25. Claim 7 requires that the means for making the handle openable be in the form of a latching mechanism of a carabiner. *Id.* at ¶ 26. A carabiner is "an oblong metal ring with one spring-hinged side that is used especially in mountain climbing as a connector and to hold a freely running rope." *Id.* Claim 20 requires that the central openable portion may be opened by a single finger and automatically returns to the closed position when the finger is removed. *Id.* at ¶ 27.

### III. Claim Construction

Clipco and Ignite contested the "elongated arm" and "means for making said handle openable" claim limitations in Claims 2 and 21. *Id.* The court construed "elongated arm" to mean "an attachment that is long in comparison to its width and that generally extends horizontally outward." *Id.* at ¶ 13; *see also* Memorandum Opinion & Order, 2/23/05, Dkt. No. 36 at 9. It is uncontested that Ignite's Extreme Tumbler Mug and Extreme Coffee Press contain one elongated arm as construed by the court. Clipco Facts at ¶ 15. The court also construed the means-plus-function limitation to require the means for making the handle openable perform two functions: (1) make the handle openable; and (2) make the handle automatically recloseable. *Id.* at ¶ 14; Dkt. No. 36 at 11. The court identified Figs. 1-5, 16 and 17 as containing the corresponding structure for the required functions of the means-plus-function limitation. *Id.*; Dkt. No. 36 at 12-13. The tumbler mug and coffee press include pivot levers that can be opened by exerting pressure with a single finger. *Id.* at ¶ 21. When the finger is released, the levers automatically reclose. *Id.*

4

## DISCUSSION

### I. Legal Standard

On cross-motions for summary judgment, each movant must satisfy the requirements of Rule 56. *EEOC v. Admiral Maint. Serv., L.P.*, No. 97 C 2034, 1998 WL 102748, at * 6 (N.D. Ill. Feb. 26, 1998). Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party meets its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An infringement analysis requires two steps: claim construction and comparison of the alleged infringing product with the patent claims. *See Markman v. Westview Instr., Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996); *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387-89 (Fed. Cir. 1992). The court has already performed the first step by construing the disputed claims. *See* Memorandum Opinion & Order, 2/23/05, Dkt. No. 3. Comparison of the claims with the accused devices, in a summary judgment setting, requires a determination that "a reasonable trier of fact could find that every limitation in every construed claim at issue" is found in the infringing products. *Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*, 157 F.3d 1311, 1316-

17 (Fed. Cir. 1998). "A patent is infringed if a single claim is infringed." *Intervet America, Inc. v. Kee-Vet Lab., Inc.*, 887 F.2d 1050, 1055 (Fed. Cir. 1989); *see also Deering Precision Instr., LLC v. Vector Distrib. Sys.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003). "Literal infringement of a claim exists when every limitation cited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly." *Amhil Enters. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996).

## II. Summary Judgment on Independent Claims

Clipco contends Ignite's tumbler mug meets all limitations of Claims 2 and 21, and that the coffee press meets all limitations of Claim 2. Ignite Facts at ¶ 13. Ignite does not dispute that the infringement issue is ready for summary disposition. Rather, Ignite maintains the tumbler mug and coffee press do not infringe the '909 patent and judgment should be entered in its favor.

### A. Elongated Arm

It is undisputed that the Extreme Tumbler Mug and Extreme Coffee Press each contain one elongated arm as construed by the court. Clipco contends Ignite's products also contain second attachments that extend horizontally outward and are longer than they are wide, constituting elongated arms. Clipco Facts at ¶¶ 16-19. Clipco asserts the products therefore possess both first and second elongated arms as required by the '909 patent.

Ignite maintains the products do not have second elongated arms, and the second attachments are flanges or pivot stubs that merely provide a pivot connection for the pivot member directly next to the body. *See* Ignite Resp. to Clipco Facts at ¶¶ 15-19. Ignite argues Figure 8 of the patent distinguishes between an arm and a flange, and Ignite cites testimony from the patent inventor acknowledging that the Figure 8 embodiment includes arms, 52 and 54, and flanges, 50a and 50b.

Accordingly, Ignite argues that a flange does not qualify as an arm even though it projects outwardly from the wall of the mug. In addition, Ignite contends that even if they were arms, the lower flanges are not "stretched out, lengthened" and do not have "a form notably long in comparison to [their] width." Ignite Mem. at 11.

First, the fact that the Figure 8 embodiment includes arms *and* flanges does not mean that the second attachments on Ignite's products, which resemble flanges, are in fact flanges as described by the patent. Instead, the function of the patent's flanges must be compared with the second attachments on the accused products. The patent describes the function of Figure 8's flanges as permitting horizontal movement of the handle attachment. *See* Ignite Ex. A, col. 7, ln. 60 - col. 8, ln. 5. The lower attachments on Ignite's products do not satisfy the functional description of the flanges described in the '909 patent, as they do not provide a mounting means to allow horizontal swinging of the openable handle. Instead, the tumbler mug and coffee press possess lower attachments that apparently serve the same function as the '909 patent's elongated arms - they connect the handle to the object and connect to a means for making the handle openable. *See* Clipco Exs. 1-2.

Second, the court construed "elongated arm" as used in Claims 2 and 21 to mean "an attachment that is long in comparison to its width and that generally extends horizontally outward." *See* Dkt. No. 36 at 9. Ignite mistakenly contends the arms must have a form "notably long" in comparison to width because the court interpreted the phrase "elongated arm" in a manner consistent with the dictionary definitions of "arm" and "elongate." *See id.* at 8-9. The definition consulted for the word "elongate" was "stretched out, lengthened, having a form notably long in comparison to its width." *Id.* However, Ignite improperly seeks to impose additional limitations and deliberately

7

misconstrues the court's construction. While the construction is consistent with the intrinsic evidence and dictionary definitions, the definitions were not adopted verbatim and Ignite's proposed construction was explicitly rejected. "Ignite's proposed construction - 'an element having a stretched out or lengthened configuration, and having a length substantially greater than its width' - ignores the word arm, and goes beyond the ordinary meaning of elongate to the extent it requires *substantially* greater length than width." *Id.* at 9.

The elongated arm limitation of Claims 2 and 21 is satisfied if the second attachments are longer than they are wide.[1] The parties agree that the second attachment on the Extreme Tumbler Mug measures approximately 8 mm in width and 12 mm in length. Clipco Facts at ¶ 17. The mug therefore meets the elongated arm limitation of Claims 2 and 21. While Clipco asserts the disputed attachment on the Extreme Coffee Press measures approximately 9 mm in width and 11 mm in length, *see id.* at ¶ 19, Ignite asserts the attachment measures approximately 10 mm in width and 10 mm in length. Ignite Resp. to Clipco Facts at ¶ 19. The distinction is critical because a projection that is not elongated does not satisfy the limitation as construed by the court. *See* Dkt. No. 36 at 9 ("Clipco's proposed construction – 'a projection' – ignores the word elongated"). Whether the coffee press meets the elongated arm limitation of Claim 2 is a disputed issue of fact.

### B. Permanent Attachment

Ignite asserts the claims require the elongated arms to be permanently attached and not separable from the body of the transportable object. According to Ignite, the lower attachment on

---

[1] The parties do not dispute that the second attachments extend horizontally outward.

the tumbler mug[2] does not meet the permanency limitation of Claims 2 and 21 because it is removable as follows:

> To remove the lower flange or pivot stub, the rubber stoppers are first removed from the ends of the shaft or counterbore in the pivot member, and the shaft is removed using a simple tool, such as a paper clip. Once the shaft is removed, the pivot member and a single torsion spring immediately come apart from the pivot stub. After the pivot stub and spring are removed, the central cavity of the pivot stub is revealed. A screw is provided in the cavity of the pivot stub to removably connect the pivot stub to the body of the Extreme Tumbler Mug. The screw can easily be unscrewed to separate the pivot stub from the mug body.

Ignite Mem. at 8. Ignite emphasizes that the permanent nature of the arms was highlighted and relied upon by Clipco during the patent's prosecution.

Clipco contends Claims 2 and 21 of the patent require that the *handle* be non-separable from the portable object, and that the claims do not expressly require each of the first and second arms themselves be non-separable. Clipco contends the upper attachment of the handle to the extreme tumbler is permanently attached to the tumbler and is sufficient, by itself, to render the handle of the tumbler non-separable from the tumbler's body. Further, Clipco maintains the tumbler's lower attachment provides the appearance of an integral part and is not intended to be removed or separated from the tumbler at any time after the product is assembled. No means for removing the attachment is visible, and actual removal requires several stems and proper tools. Clipco concludes the tumbler's lower attachment is not removable from the body in the normal use of the product.

Ignite's arguments must be rejected. Setting aside Ignite's dubius implication that the second attachment is easily removable, the patent and prosecution history consistently support Clipco's contention that the arms must be attached in a manner that makes the handle non-removable. Ignite

---

[2] Ignite does not dispute that the handle of the coffee press is permanent and its argument regarding the removable nature of the second attachment pertains only to the tumbler mug.

cites two portions of the claims to argue that the claims require the first and second arms be permanently attached:

> Claim 2: "said first arm and said second arm each being connected to the object by the corresponding first ends thereof in spaced relation to each other and in such manner that said handle is attached to the object so as not to be separable therefrom."

> Claim 21: "the first end of said first arm and the first end of said second arm each being connected to the mug in such a manner that the handle is integrally attached thereto so as not to be removable from the mug."

Ignite asserts these excerpts make clear that for the handle to be non-removable, the first and second arms must be non-removable. This interpretation is flawed. The cited claim excerpts are clear that the arms must be attached in a manner so that the *handle* is not removable. Nowhere does the patent require that both arms be permanently attached in and of themselves. Indeed, the patent is replete with references indicating that the handle, not the arms, must be non-removable. For example, the patent abstract provides:

> . . . elongated arms connected to the transportable object in spaced relation to each other. **The handle is attached to the transportable object so as not to be separable therefrom** and one end of the first arm and one end of the second arm each extend outwardly from the attached transportable object. . .

Ignite Ex. A (emphasis added). The background section makes clear in its discussion of prior art that the handles depicted by prior art were not permanently affixed to the portable objects. *Id.* at col. 1-2. Thus, "a need has existed for **a handle which is permanently attached** as an integral part to a variety of usually small, ordinarily hand-held, portable items . . ." *Id.* at col. 2, ln. 6-8 (emphasis added). In the invention summary, "the present invention to provide **a handle which is suitable for permanent, fixed attachment** . . .[i]t is intended that the new openable **handle be an integral part of the item to which it is permanently attached** . . ." *Id.* at col. 2, ln. 46-48, 53-55 (emphasis

10

added). The prosecution history cited by Ignite is not remotely inconsistent, nor does it imply that both arms must themselves be permanently attached.

The tumbler mug satisfies the permanency limitation of Claims 2 and 21. Even if the second attachment were removable after considerable effort and intentional dismantling, the first arm is undisputedly permanently attached to the mug so as to render the handle permanently attached. The parties do not dispute that the coffee press meets the permanency limitation of Claim 2.

### C. Means-Plus-Function

Clipco maintains the tumbler mug and press each satisfy the patent's means-plus-function limitations. The court construed the means-plus-function limitation of Claims 2 and 21 to require the means for making the handle openable perform two functions: (1) make the handle openable; and (2) make the handle automatically recloseable. *See* Dkt. No. 36 at 11. The court identified Figs. 1-5, 16 and 17 as containing the corresponding structure for the required functions of the means-plus-function limitation. *Id.* at 12-13. The court described the first embodiment as follows:

> [T]he specification describes the openable center portion of "handle 10" as an elongated openable central portion that is pivotally connected by a pin to the free end of the lower arm. The free end of the openable central portion and the free end of the first arm engage in a latching interconnection. Handle 10 has an internal spring to facilitate automatic reclosing of the openable central portion. The specification clearly associates this structure with performing both functions by stating "[t]hus handle attachment 10 . . . is intended to operate in openable and recloseable fashion . . . and may be repeatedly opened and closed."

*Id.* at 12 (internal citations omitted). Clipco argues Ignite's products are identical to the embodiment of Figures 1-4 and 16-17 and satisfy the functions as identified by the court because: (1) they include a lever that is pivotally connected by a pin to the free end of the lower arm/attachment; (2) the free end of the lever engages the free end of the upper, first arm in a latching interconnection; (3) the

11

latching interconnection is formed by a tab on the lever that fits into a notch in the first arm; and (4) the lever is rendered automatically recloseable by an internal spring.

Ignite asserts Figures 1-4, 16-17 disclose a carabiner that makes the handle openable and automatically recloseable by using a leaf spring and a compression spring. Ignite contends its products contain a single torsion spring that does not provide the downward force provided by the '909 patent's compression spring. Because the structure utilized in Ignite's products are not the same structure as that required by the patent, Ignite claims the products do not satisfy the means clause of the claims or, at the very least, a factual dispute exists on the means issue and Clipco's motion must be denied.

Ignite does not dispute that the pivoting member in the handles of the accused products perform the identical functions identified by the court as claimed by the "means for making said handle openable" limitations of Claims 2 and 21. There is nothing in the patent to support Ignite's assertion that the structure requires both a leaf spring and a compression spring. While Figures 2 and 4 of the patent disclose a leaf and compression spring combination, the specification explains the "[h]andle attachment 10 *may* have an internal spring member 20 (indicated schematically in phantom in FIGS. 2 and 4) to facilitate reclosing of openable central portion 16 in the usual fashion." Ignite Ex. A, col. 4, ln. 60-64 (emphasis added). The patent's representation of an "internal spring member" does not signify any particular type of spring or necessary combination of multiple springs. The patent's use of illustrations or examples does not necessarily limit the patent's scope to the preferred embodiment. *See Amhil Enters. v. Wawa, Inc.*, 81 F.3d 1554, 1559 (Fed. Cir. 1996) ("[a] preferred embodiment, however, is just that, and the scope of the patentee's claims is not necessarily or automatically limited to the preferred embodiment"); *see also* Ignite Ex. A, col. 10, ln. 41-43

("... all matter contained in the foregoing description or shown in the accompanying drawing shall be interpreted as illustrative rather than limiting"); *id.* at col. 2, ln. 59-63 ("[n]umerous embodiments of the invention are conceived . . . [a]s it would be impossible to describe all such embodiments, a representative variety of same will be described..."). Ignite's tumbler mug satisfies the means-plus-function limitation of Claims 2 and 21. The coffee press satisfies the means-plus-function of Claim 2.

The Extreme Tumbler Mug meets all limitations of Claims 2 and 21. Summary judgment on the Extreme Tumbler Mug's infringement is granted. Summary judgment on the Extreme Coffee Press' infringement of Claim 2 must be denied. Literal infringement of a claim exists only when every limitation cited in the claim is found in the accused device. *Amhil Enters. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996). A material issue of fact exists regarding the length of the coffee press' second attachment in comparison to its width and, therefore, whether the second attachment constitutes an elongated arm as defined by the court.

### III. Summary Judgment on Dependent Claims

Clipco contends Ignite's tumbler mug and coffee press infringe dependent Claims 3-7 and 20. Ignite does not address this argument. Because a party may infringe an independent claim but not infringe a dependent claim, the court briefly addresses Clipco's arguments. *See e.g., Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989). An issue of fact exists regarding whether the coffee press infringes independent Claim 2. Accordingly, the coffee press cannot be found to infringe Claims 3-7 or 20, which are dependent on independent Claim 2. *Id.* The tumbler mug, however, includes each limitation of Claim 2 and may therefore infringe the dependent claims.

### A. Claim 3

Claim 3 states:

> The openable handle of claim 2, wherein said means for making said handle openable is an elongated member having first and second opposed ends and extending therebetween, the first end of said elongated member being pivotally connected to the second end of one of said first arm and said second arm and the second end of said elongated member including means for selectively openable latchable connection to the second end of the other of said first arm and said second arm.

Clipco Ex. 18, col. 11. The tumbler mug's means for making the handle openable is a lever which has first and second opposed ends. *See* Clipco Ex. 1. The first end of the lever is pivotally attached to the second end of the second arm. *Id.* The second end of the lever has means for a selectively openable latchable connection to the second end of the first arm in the form of a tab that fits into a notch in the second end of the first arm. *Id.* Claim 3's limitations are satisfied. The tumbler mug infringes Claim 3.

### B. Claim 4

Claim 4 requires that the means for making the handle openable be recloseable after opening. It is uncontested that the tumbler mug includes pivot levers that can be opened by exerting pressure with a single finger. Clipco Facts at ¶ 21. When the finger is released, the levers automatically reclose. *Id.* Ignite does not dispute that the structure used in its products make the handle openable and automatically recloseable. Claim 4's limitation is satisfied. The tumbler mug infringes Claim 4.

### C. Claim 5

Claim 5 requires that the means for making the handle openable be repeatedly openable and recloseable. It is uncontested that the tumbler mug includes pivot levers that can be opened by

exerting pressure with a single finger. *Id.* When the finger is released, the levers automatically reclose. *Id.* Ignite does not dispute that the structure used in its products make the handle openable and automatically recloseable. Claim 5's limitation is satisfied. The tumbler mug infringes Claim 5.

### D. Claim 6

Claim 6 adds a limitation requiring that the means for making the handle openable include a spring for effecting automatic reclosing of the openable portion. Ignite contends the mug contains a single torsion spring that makes the handle openable and automatically recloseable. Claim 6's limitation is satisfied. The tumbler mug infringes Claim 6.

### E. Claim 7

Claim 7 requires that the means for making the handle openable be in the form of a latching mechanism of a carabiner. A carabiner is "an oblong metal ring with one spring-hinged side that is used especially in mountain climbing as a connector and to hold a freely running rope." It is undisputed that the lever pivotally attached to the second attachment on the tumbler mug includes a tab that engages a notch in the first attachment. *See* Clipco Facts at ¶ 21. The lever is in the form of a carabiner latching mechanism. Claim 7's limitation is satisfied. The tumbler mug infringes Claim 7.

### F. Claim 20

Claim 20 requires that the central openable portion may be opened by a single finger and automatically returns to the closed position when the finger is removed. It is uncontested that the tumbler mug includes pivot levers that can be opened by exerting pressure with a single finger.

Clipco Facts at ¶ 21. When the finger is released, the levers automatically reclose. *Id.* Claim 20's limitation is satisfied. The tumbler mug infringes Claim 20.

## CONCLUSION

Clipco's summary judgment motion is granted in part. Ignite's Extreme Tumbler Mug infringes Claims 2-7, 20 and 21 of the '909 patent. Ignite's summary judgment motion is denied.

August 1, 2005                                    ENTER:

*[signature]*
Suzanne B. Conlon
United States District Judge